James A. TALLEY, et al.

v.

John S. FARRELL, et al.

No. Civ. CCB–00–3463.

United States District Court, D. Maryland.

Aug. 1, 2001.

David M. Melnick, Rockville, MD, for plaintiff.

Laura J. Gwinn, Prince George's County Office of Law, Upper Marlboro, MD, for defendants.

**1.** Subsequent to the plaintiffs' filing their Amended Complaint, the defendants moved to dismiss it. In that motion, they adopt the arguments made in the original motion to dismiss and contend that the new Title VII claim should be dismissed for the same rea-

## MEMORANDUM

BLAKE, District Judge.

The plaintiffs, James Talley and his family, have sued Prince George's County, Chief of Police John Farrell, and various police officers alleging a series of racially discriminatory actions that resulted ultimately in Mr. Talley's termination from the police force. The named defendants, except Sgt. Edward Walters, have filed a joint motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6). In that motion, the defendants move to dismiss almost all of the complaint except Counts V, VIII, X, XI, XII, and XIII which were filed against unnamed defendants.[1] Sgt. Walters has filed a separate motion to dismiss the complaint in its entirety as applied to him. The motions have been briefed fully, and no hearing is necessary. *See* Local Rule 105.6. For the reasons that follow, the defendants' motions will be granted in part and denied in part.

## BACKGROUND

James Talley was employed by Prince George's County as a police officer from March 1995 until his termination on June 15, 2000. (Compl.¶¶ 9, 63.) In his complaint, he alleges that he was subjected to systematic racial discrimination and harassment. To support that assertion, he contends that the following actions were taken against him and his family:

1. From May through July 1998, Mr. Talley was the subject of an investigation undertaken by the Narcotics Enforcement Division. He states that police officers questioned employees at the Mercedes

sons. (Mem.Supp.Mot. to Dis.Am.Compl. at 2.) They do not oppose the amendment. *See infra* note 2. Accordingly, the original Motion to Dismiss will be denied as moot, and the following determinations are made pursuant to the Motion to Dismiss Amended Complaint.

Benz dealership at which he purchased his automobile as well as a manager at an apartment complex for which Mr. Talley organized security. (Compl.¶¶ 12, 15.) Also, he claims to have been followed and surveilled on several occasions by members of the Narcotics Enforcement Division. (*Id.* ¶¶ 13–14, 38, 42.)

2. On two occasions, Sgt. Walters denied Mr. Talley sick leave, instead requiring him to work on his regular day off to make up time he was entitled to take as leave. (*Id.* ¶¶ 16–17.) Sgt. Walters also falsified Mr. Talley's leave records for those instances and refused to fill out necessary workers compensation forms in an unrelated incident. (*Id.* ¶¶ 18–19.)

3. Despite Mr. Talley's complaints, no action was taken to remedy the alleged discrimination. Rather, he attended a mediation session which resulted in his being transferred to a new section and referred to psychologist Joseph Rollo.

4. On August 15, 1999, Mr. Talley called in sick. When he came to the office that night, he found in his mailbox cold medicine and leave slips bearing the designation "P.O. Sick Nigga." (*Id.* ¶ 21.) Mr. Talley was offered a transfer to another division; he refused the transfer and requested an investigation into the incident. (*Id.* ¶ 25.) The next day, Officer Katie Kelley admitted to placing the items in Mr. Talley's mailbox, "as a joke," but denied writing on them. (*Id.* ¶ 27.) The meeting at which Officer Kelley made the admission was arranged by Captain Archie O'Neal and took place in the parking lot at a Shoppers' Food Warehouse. (*Id.*)

Mr. Talley alleges that, after the meeting, Cpl. Daniels falsely informed the lieutenant in charge that Mr. Talley no longer wanted the investigation to continue. (*Id.* ¶ 28.) Further, he alleges that Sgt. Dischinger, of the Internal Affairs Division ("IAD"), discouraged him from proceeding with the complaint. (*Id.* ¶ 29.) He also claims that Sgt. Glyde Montgomery trivialized this incident at a meeting of Mr. Talley's squad. (*Id.* ¶ 32.)

5. On August 20, 1999, Mr. Talley attended a routine counseling session with Joseph Rollo, the director of Psychological Services, at which he discussed the allegedly discriminatory actions taken against him. (*Id.* ¶ 31.) He claims that Mr. Rollo disclosed this information to the IAD.

6. Cpl. Francis Mammano falsified a request for summons by substituting the names of two officers who were not present during an investigation for Mr. Talley. (*Id.* ¶ 33.)

7. Other officers did not back up Mr. Talley when they should have done so. (*Id.* ¶ 34.)

8. Mr. Talley received a letter mailed in a Prince George's County government envelope that contained threats and racial epithets. The Police Department did not institute any additional protection for Mr. Talley or his family. (*Id.* ¶ 40.)

9. At 3:30 a.m. on January 31, 2000, shots were fired through a window at Mr. Talley's home. (*Id.* ¶¶ 43–45.) Graffiti containing a racial slur and threat was painted on the fence behind Mr. Talley's house. Mr. Talley contends that the investigation into this incident was inadequate. Mr. Talley's firearm was taken by the officers and Mrs. Talley's automobile was searched. The officers did not have a warrant for either action. (*Id.* ¶ 47.) An evidence technician entered the Talley residence without a warrant or permission later that morning to recover a window screen he claimed to have forgotten. (*Id.* ¶ 48.)

At roll call that night, the officers discussed the incident at Mr. Talley's home, and Lt. Cox referred to confidential

charges against Mr. Talley for allegedly threatening another officer. (*Id.* ¶ 49.) Further, on March 22, Mr. Talley overheard Sgt. Montgomery state on the phone that Mr. Talley had "shot his house up." (*Id.* ¶ 50.)

10. On May 14, 2000, Mrs. Talley was abducted by unknown assailants who threatened her and Mr. Talley. (*Id.* ¶¶ 54–55.) The assailants urinated on her, spray painted the words "back off Talley" on her clothes, and pushed her out of a van. (*Id.* ¶ 55–59.)

On October 5, 1999, Mr. Talley filed an EEOC complaint alleging discrimination and harassment based on race and retaliation. (Compl.¶ 35.) On November 8, 1999, Mr. Talley filed a Charge of Discrimination with the Prince George's County Human Relations Commission. (*Id.* ¶ 39.)

On October 12, 1999, Mr. Talley was notified that he was the subject of two unrelated investigations. (Compl. ¶ 36; Mem.Supp. Def.s' Mot. to Dis. at 1.) The first concerned alleged false statements he made in connection with the incident involving items in his mailbox. (Compl.¶ 36.) The second investigation related to alleged violations of the department's rules regarding secondary employment. (*Id.*, Mem.Supp. Def.s' Mot. to Dis. at 1, Orenstein Aff. ¶ 5.) On April 6, 2000, an Administrative Hearing Board was convened and a hearing was held at which Mr. Talley was represented by Robert Bonsib, Esq. (Mem.Supp. Def.s' Mot. to Dis., Orenstein Aff. ¶ 6.) The Board found Mr. Talley guilty of 48 counts related to his secondary employment. (*Id.*, Farrell Memo.) It reconvened on April 28 for a character hearing. (*Id.*, Orenstein Aff. ¶ 9.) On May 31, the Board issued recommended punishments for each count for which Mr. Talley was found guilty; those recommendations ranged from a $50 fine to termination. (*Id.*, Farrell Memo.) On June 14, the Chief of Police, John Farrell terminated Mr. Talley's employment. (*Id.*)

Mr. Talley did not file an appeal from the decision of the Administrative Hearing Board. Rather, on November 27, 2000, he, together with his wife, filed this lawsuit. The Talleys named as defendants Police Chief Farrell in his official and individual capacities, Prince George's County, and 12 police officers. In their complaint, they assert 13 separate claims: employment discrimination based on race and retaliation in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 (Counts I and II),[2] violations of the Fourth, Fifth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 (Count III), violations of Articles 24 and 26 of the Maryland Declaration of Rights (Count IV), assault (Counts V, X, and XII), invasion of privacy (Count VI), defamation (Count VII), intentional infliction of emotional distress (Counts VIII, XI, and XIII), conspiracy in violation of 42 U.S.C. § 1985(3) (Count IX), and false imprisonment (Count XII). The Talleys seek an injunction precluding the defendants from discriminating against Mr. Talley, Mr. Talley's reinstatement to the police force, compensatory damages including back pay

---

2. In Counts I and II of the original complaint, Mr. Talley asserted claims based solely on 42 U.S.C. § 1981. On June 26, 2001, Mr. Talley filed an Amended Complaint in which he added Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as a basis for relief in those counts. The Amended Complaint is identical to the original complaint in all other respects. As the defendants had not submitted a responsive pleading before the Amended Complaint was filed, the plaintiffs could amend as a matter of right. *See* Fed.R.Civ.P. 15(a); *Domino Sugar Corp. v. Sugar Workers Local Union 392,* 10 F.3d 1064, 1068 (4th Cir.1993) ("A motion to dismiss is not a responsive pleading for the purposes of Rule 15(a).").

and other benefits of employment, and punitive damages in the amount of $50 million. (Compl. at 25–26.)

The named defendants, except Sgt. Edward Walters, have filed a joint motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Specifically, the defendants have moved to dismiss almost all aspects of the complaint except Counts V, VIII, X, XI, XII, and XIII which were filed against only unnamed defendants. Sgt. Walters has filed a separate motion to dismiss.

## STANDARD OF REVIEW

The Fourth Circuit has summarized the basic principles governing the resolution of Rule 12(b)(6) motions as follows:

> The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; "importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir.1992). Accordingly, a Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *See id.* We do note, however, that for purposes of Rule 12(b)(6), we are not required to accept as true the legal conclusions set forth in a plaintiff's complaint. *See District 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085 (4th Cir.1979).

*Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir.1999). Exhibits attached to the pleadings are considered part of the complaint. *See* Fed.R.Civ.P. 10(c).

Where matters outside the pleadings are considered by the court, however, a defendant's motion to dismiss will be treated as one for summary judgment under Rule 56. *See* Fed.R.Civ.P. 12(b), (c). Fed.R.Civ.P. 56(c) provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir.1994). In making this determination, the evidence of the party opposing summary judgment is to be believed and all justifiable inferences drawn in her favor. *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir.1997) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505). The non-moving party may not rest upon mere allegations or denials in her pleading, however, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Allstate Fin. Corp. v. Financorp, Inc.*, 934 F.2d 55, 58 (4th Cir.1991). The "mere existence of a scintilla of evidence in support of the plaintiff's position" is not enough to defeat a defendant's summary judgment motion. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

## ANALYSIS

### Count I: Race Discrimination

In his amended complaint, Mr. Talley asserts that Prince George's County discriminated against him on the basis of his race in violation of Title VII and 42 U.S.C.

§ 1981. Specifically, he alleges the creation of a hostile work environment, disparate treatment in the terms and conditions of his employment, the initiation of IAD investigations without proper cause, and the termination of his employment without proper cause. (Compl.¶ 65.)

■ Initially, the plaintiffs concede that § 1981 does not permit actions against a municipality based on *respondeat superior* liability. *See Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 738, 109 S.Ct. 2702, 2724, 105 L.Ed.2d 598 (1989); *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir.1995). They make no argument in Count I or II that there is a county-wide system of racial discrimination and do not contend that Chief Farrell had final policy-making authority. Instead, their complaint alleges that "Defendant Prince George's County, through one or more of the individual defendants, intentionally discriminated against Plaintiff...." (Compl.¶ 65.) The plaintiffs thus assert liability based on *respondeat superior*. Accordingly, they cannot state a claim under § 1981. *See Crowley v. Prince George's County, Maryland*, 890 F.2d 683, 687 (4th Cir.1989) (concluding that "Prince George's County plainly cannot be held liable for the personnel decision of its police chief"). The motion to dismiss, therefore, will be granted as to the § 1981 claim in this count.

■ Further, the plaintiffs concede that "the mere initiation of an investigation is not, under the predominate legal authority, considered itself an adverse employment action." (Pl.s' Opp'n at 16.) *See generally Von Gunten v. Maryland*, 243 F.3d 858, 865–66 (4th Cir.2001) (defining the scope of the term "adverse employment action" in the context of Title VII sex discrimination). *See also Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir.1998) ("Although a reprimand can constitute an adverse employment action, an investigation does not."). Accordingly, the defendants' motion to dismiss will be granted insofar as this Count states a cause of action based on the initiation of an IAD investigation.

■ The defendants concede, however, that Mr. Talley has stated a limited claim for disparate treatment in the terms and conditions of his employment with regard to Sgt. Walters's refusal to grant him sick leave. (Mem.Supp. Def.s' Mot. to Dis. at 7.)[3] The court, therefore, will deny the motion to dismiss insofar as it challenges that claim.

Mr. Talley also alleges the creation of a hostile work environment. To state such a claim, he must show that:

(1) the harassment was unwelcome; (2) the harassment was based on his race . . .; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abu-

---

**3.** In light of this admission, the court will deny Sgt. Walters's Motion to Dismiss. Sgt. Walters is represented by the same counsel as the group of defendants who filed the motion in which this admission was made. Counsel has conceded that sufficient facts were alleged in the complaint to indicate that Sgt. Walters may have contributed to the alleged wrongdoing. In light of this concession, the fact that Counts III and IV are addressed against "police officials and officers," (Compl.¶¶ 69, 77), does not render them too vague to state a claim against Sgt. Walters as to the limited issue of sick leave. Though Sgt. Walters's motion does not adopt explicitly the arguments made in the other defendants' motion to dismiss, the court assumes that, as he is represented by the same counsel and made a defendant to the same claims, Sgt. Walters intended his motion to supplement the motion filed by the other defendants. Accordingly, the court imputes to him the arguments presented by the other defendants in their joint motion to dismiss.

sive atmosphere; and (4) there is some basis for imposing liability on the employer. *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir.1998). Assuming, for the purposes of resolving this motion, that Mr. Talley can satisfy the first two prongs of this test, he cannot satisfy the third or fourth.

■ "[H]arassment is actionable under Title VII only if it is so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment." *Clark County School Dist. v. Breeden*, 532 U.S. 268, 121 S.Ct. 1508, 1509, 149 L.Ed.2d 509 (2001) (internal punctuation and citations omitted). Indeed, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment— an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). *See also Breeden*, 121 S.Ct. at 1510. To determine whether alleged harassment constitutes a hostile work environment, the court looks to all the surrounding circumstances including "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating or a mere offensive utterance; and (4) whether it unreasonably interferes with [the] employee's work performance." *Smith v. First Union Nat. Bank*, 202 F.3d 234, 242 (4th Cir.2000) (citing *Harris*, 510 U.S. at 23, 114 S.Ct. at 371).[4]

■ The alleged incidents of harassment in this case took place over the course of two years. Of the specifically race-based incidents, Mr. Talley has not named culprits for the letter containing racial threats mailed to his home, the shots and graffiti at his home, or the abduction of his wife; nor has he shown that those incidents were related to his employment in any way. Thus, the most substantial allegations Mr. Talley makes to support his hostile work environment claim surround the incident involving cold medicine and leave slips in his mailbox. That incident is insufficient to form the basis for a hostile work environment claim.

Thus, even accepting, as it must, all of Mr. Talley's allegations as true, the court cannot conclude that the incidents of harassment that can be connected to his employment are sufficiently "severe or pervasive" to constitute a hostile work environment. *See Carter v. Ball*, 33 F.3d 450, 461 (4th Cir.1994) ("The existence of a hostile environment cannot be predicated upon acts that are isolated or genuinely trivial.") (citation omitted). Accordingly, the defendants' motion to dismiss will be granted insofar as it relates to Mr. Talley's Title VII claim for hostile work environment.

■ Finally, Mr. Talley alleges that he was terminated without proper cause based on his race. The joint defendants have submitted with their motion to dismiss several attachments that relate specifically to this claim. Because it has considered those materials, the court will treat the motion as one for summary judgment as it relates to Mr. Talley's termination. *See* Fed.R.Civ.P. 12(c). The plaintiffs were provided adequate notice by the defendants' submission, *see Gay v. Wall*, 761 F.2d 175, 177 (4th Cir.1985) ("When a party is aware that material outside the pleadings is before the court,

---

4. Initially, the court notes that, in his memorandum in opposition to the defendants' motion to dismiss, Mr. Talley provides no argument against the defendants' contentions that he cannot state claims for hostile work environment, wrongful termination, or retaliation. (Pl.s' Opp'n at 16.)

the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment."), and they did not file a Rule 56(f) affidavit specifying needed discovery, *see Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir.1998). Accordingly, the court may properly treat the motion as one for summary judgment.

Because Mr. Talley offers no direct evidence of discrimination in his firing, the familiar *McDonnell–Douglas* proof scheme applies to this claim. *See Hawkins v. Pepsico, Inc.*, 203 F.3d 274, 278 (4th Cir. 2000.) That structure was clarified by the Supreme Court in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). First, the plaintiff must establish a *prima facie* case of racially motivated discharge. *Id.* at 142, 120 S.Ct. at 2106; *Carter*, 33 F.3d at 458. If he can do so, the burden shifts to the defendant to provide "a legitimate, nondiscriminatory reason" for the adverse action. *Reeves*, 530 U.S. at 142, 120 S.Ct. at 2106 (*quoting Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). The defendant's burden is one of production, not persuasion, and the court should not evaluate the credibility of the defendant's explanation. *See id.* Once the defendant satisfies its burden, "the *McDonnell Douglas* framework—with its presumptions and burdens—[disappears] and the sole remaining issue [is] discrimination *vel non.*" *Id.* (internal citations and punctuation omitted). At that point, the plaintiff has the burden to prove that the reasons proffered by the defendant are pretextual and that he was the victim of retaliation. *Hawkins*, 203 F.3d at 278.

Though it is by no means clear, the court will assume for the purposes of resolving this motion that Mr. Talley could make a *prima facie* case for wrongful termination.[5] Thus, the burden shifts to the defendants to demonstrate "a legitimate, nondiscriminatory reason" for Mr. Talley's firing. They have met this burden by providing evidence that Mr. Talley was terminated after being found guilty by an Administrative Hearing Board of more than 40 violations of the department's rules regarding secondary employment. (*See* Mem.Supp. Def.s' Mot. to Dis., Orenstein Aff. ¶¶ 8–11, Farrell Aff., Farrell Memo.)

Mr. Talley has offered no argument that this reason for his termination was pretextual. In his complaint, he does challenge the sufficiency of the hearing, (*see* Compl. ¶ 62), but he has offered no evidence to support the conclusion that the results of the Administrative Hearing Board were not the true reason for his termination. Accordingly, the court will grant summary judgment in favor of the defendants on the claim for wrongful termination. Thus, the motion to dismiss Count I of the Amended Complaint will be denied insofar as Mr. Talley states a claim under Title VII for disparate treatment in the terms and conditions of his employment with regard to Sgt. Walters's refusal to grant him sick leave. The defendants will be awarded summary judgment on the claims relating to Mr. Talley's termination, and the defendants' motion to dismiss will be granted as to all other aspects of Count I.

---

**5.** According to the Fourth Circuit:

A *prima facie* case of racially motivated discharge consists of the following four elements: (1) plaintiff is a member of a protected class; (2) plaintiff was qualified for the job and performed the job satisfactorily; (3) in spite of plaintiff's qualifications and performance, plaintiff was demoted and ultimately discharged; and (4) the position remained open to similarly qualified applicants after plaintiff's dismissal. *Carter*, 33 F.3d at 458–59.

*Count II: Retaliation*

▮▮▮ Mr. Talley asserts that Prince George's County retaliated against him in violation of Title VII and § 1981 for filing complaints regarding race discrimination. The substance of this allegation is the same as that supporting Mr. Talley's claim for racial discrimination in Count I. Thus, for the reasons stated above, the court will dismiss the § 1981 and Title VII claims based on the creation of a hostile work environment and the initiation of IAD investigations, and grant summary judgment in favor of the defendants on the claim related to Mr. Talley's termination. Moreover, the alleged disparate treatment, Sgt. Walters' refusal to grant Mr. Talley sick leave, happened well before Mr. Talley participated in a protected activity. It, therefore, cannot form the basis for a retaliation claim. *See Hooven–Lewis v. Caldera*, 249 F.3d 259, 274 (4th Cir.2001). Accordingly, the defendants' motion to dismiss will be granted as to this claim as well.

*Counts III and IV: Violations of Federal Constitution and Maryland Declaration of Rights*

Mr. Talley alleges that Prince George's County and its police officials and officers deprived him of due process of law, equal protection, and the right to be free from unreasonable searches and seizures in violation of the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution and Articles 24 and 26 of the Maryland Declaration of Rights. (Compl.¶¶ 69–77.) Specifically, the plaintiffs' claims are based on the IAD investigations of Mr. Talley, the entry and search that took place after the shooting at Mr. Talley's home, the supervision and discipline in the police department, and Mr. Talley's termination.

Initially, the plaintiffs concede that the initiation of an investigation, by itself, cannot amount to a constitutional violation in this context and have agreed to "strike the portions of Counts III and IV that pertain specifically to the investigations of Mr. Talley as separate claims." (Pl.s' Opp'n at 16.) Thus, the motion to dismiss will be granted insofar as the plaintiffs seek to assert a violation of Mr. Talley's rights based on the initiation of investigations.

The defendants, however, concede that the plaintiffs have stated a claim under § 1983 with respect to the unlawful entry, search, and seizure that Mr. Talley alleges took place after the shooting at his home. (Mem.Supp. Def.s' Mot. to Dis. at 10.) Thus, the court must deny the motion to dismiss insofar as Counts III and IV state claims based on those actions.

Next, the plaintiffs allege that the County failed to properly supervise and discipline its officers regarding constitutional violations related to Mr. Talley and other citizens. (Compl.¶¶ 70–73.) Other than the illegal search and seizure at Mr. Talley's home, however, the plaintiffs have alleged no constitutional violations carried out by Prince George's County officers and have offered no support for the argument that the supervision or discipline was racially biased. Moreover, in their opposition, the plaintiffs state that they

> are prepared to amend their complaint to make it clear that a central aspect of their equal protection claim is that the Prince George's County police departments' disciplinary system (IAB investigations and AHB hearings) disproportionately and more severely discipline African American officers than white officers . . . .

(Pl.s' Opp'n at 17–18.) Subsequent to that filing, however, the plaintiffs submitted an Amended Complaint in which they added the Title VII claims to Counts I and II, but did not change Counts III or IV in any way. *See supra* note 2. Thus, the plaintiffs

still have offered no evidence or factual allegations to support their claim that the supervision or disciplinary system in Prince George's County is racially biased.

Finally, the plaintiffs allege that the hearing afforded Mr. Talley prior to his termination was "fundamentally flawed." For the reasons explained in the context of his claims for wrongful termination, the court will treat the motion to dismiss as one for summary judgment as it applies to this claim. *See* Fed.R.Civ.P. 12(c).

The plaintiffs argue that "the board ignored contrary evidence presented by Mr. Talley, ignored the testimony of witnesses on Mr. Talley's behalf, all of whom were African American, and otherwise demonstrated bias against Mr. Talley." (Compl.¶ 62.) No evidence is offered to support this contention and the court perceives no constitutional infirmity. Prior to his termination, Mr. Talley was afforded a full hearing at which he was represented by counsel and afforded the opportunity to present and cross-examine witnesses and a "character hearing" at which he was also represented by counsel and chose not to present any witnesses on his behalf. (Mem.Supp.Mot. to Dis., Orenstein Aff. ¶¶ 6–9.) Mr. Talley did not appeal the Administrative Hearing Board's determination, and the plaintiffs have not provided this court with a Fed.R.Civ.P. 56(f) affidavit specifying any further discovery that might be necessary. Accordingly, the court cannot conclude that the procedures employed prior to Mr. Talley's termination were constitutionally deficient.

Accordingly, the motion to dismiss will be denied insofar as Counts III and IV allege violations based on the entry and search following the shooting at Mr. Talley's home. Summary judgment will be granted in favor of the defendants on the claims relating to the hearing afforded Mr. Talley prior to his termination, and the motion to dismiss will be granted in all other respects as to Counts III and IV.

*Count VI: Invasion of Privacy*

 To state a claim for unreasonable publicity of his private life, Mr. Talley "must allege that the matter disclosed is a private fact and that the disclosure was made public." *Taylor v. NationsBank N.A.,* 128 Md.App. 414, 738 A.2d 893, 897 (1999) (citing *Pemberton v. Bethlehem Steel Corp.,* 66 Md.App. 133, 502 A.2d 1101, 1118 (1986)). *See also Reuber v. Food Chemical News, Inc.,* 925 F.2d 703, 719 (4th Cir.1991) ("[A] party must show that an article publicized private facts in a highly offensive manner about an issue not of public concern."). "In order to be actionable, the disclosure must be about private facts that would be highly offensive and objectionable to a person of ordinary sensibilities." *Taylor,* 738 A.2d at 897. Thus, the matter "must have the same overtones of mental distress as in defamation [and] must be one affecting reputation . . . ." *Id.* (citation omitted). Further, the facts must be made public; communication to a "single person or even to a small group of persons" will not suffice. *Pemberton,* 502 A.2d at 1118 (citation omitted).

 Mr. Talley alleges that Mr. Rollo, the police psychologist, revealed to the IAD, and perhaps others in the police department, statements Mr. Talley made to him in the context of a routine counseling session. (Compl. ¶ 31; Pls' Opp'n at 8.) Those statements concerned "problems [Mr. Talley] was having with various parts of the department . . . the non-responsiveness of the department" to his complaints about discriminatory treatment, the alteration of his leave records, being followed and investigated by other officers, and the "stress and anxiety" caused by those events. (Compl. ¶ 31; Pls' Opp'n at 8.)

Mr. Rollo moves to dismiss this count on the grounds that communicating the statements to the IAD does not satisfy the publicity requirement and that the disclosed facts were not sufficiently private or offensive. Without some discovery, the court is unwilling to conclude that Mr. Rollo did not publicize the facts by revealing them to the IAD. Mr. Rollo has not shown that such a disclosure necessarily included too few individuals to satisfy the publicity requirement. Similarly, without more specific information, the court cannot find that statements regarding perceived discrimination and workplace harassment were insufficiently private to satisfy that requirement of the tort. Mr. Rollo may raise these arguments again in a motion for summary judgment.

*Count VII: Defamation*

■■■ Mr. Talley alleges that he was defamed by the statements made by Lt. Cox regarding charges Mr. Talley made against another officer and statements made by Sgt. Montgomery and Det. O'Neill to the effect that Mr. Talley had "shot up his house." (Pl.s' Opp'n at 10–11.) The defendants argue that this count should be dismissed because they are entitled to qualified immunity. Under Maryland law,

> an official of a municipal corporation, while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action.

Md.Code Ann., Cts. & Jud.Proc. § 5–507(b)(1) (2000). The officers argue that the defamation claim should be dismissed because Mr. Talley has not pled facts sufficient to establish that they acted with malice. The Maryland Court of Special Appeals recently summarized the relevant case law in this area:

"Malice" in this context requires a showing that "the official 'intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately injure the plaintiff.' " ... Malice may be inferred from the surrounding circumstances.... But, "the mere assertion that an act 'was done maliciously, or without just cause, or illegally, or with wanton disregard, or recklessly, or for improper motive' is not sufficient." ... In order to defeat immunity, the plaintiff " 'must allege with some clarity and precision those facts which make the act malicious.' "

*Green v. Brooks,* 125 Md.App. 349, 725 A.2d 596, 610 (1999) (internal citations omitted).

In his complaint, Mr. Talley alleges that the three statements "were part of an orchestrated attempt to create a hostile environment for Mr. Talley and poison the pool of officers from whom a trial board would be drawn to hear the complaint against Mr. Talley." (Compl.¶ 50.) At this stage of the proceedings and accepting all of Mr. Talley's contentions as true, the court cannot conclude that this statement, when coupled with the other allegations in the complaint, is plainly insufficient to establish malice. Because the defendants do not challenge the sufficiency of the claim in any other way, the court will deny the motion to dismiss this count. Again, the defendants may raise this issue in a motion for summary judgment once discovery has been conducted.

*Count IX: Conspiracy*

Mr. Talley alleges the existence of a civil conspiracy to deny him equal protection of the law in violation of 42 U.S.C. § 1985(3). As explained by the Fourth Circuit, to state a claim,

for "conspiracy to deny equal protection of the laws" under section 1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy. *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir.1995) (citations omitted). Further, "a claimant must show an agreement or a 'meeting of the minds' by defendants to violate [his] constitutional rights." *Id.* at 1377.

The plaintiffs in this case have not established the existence of a section 1985(3) conspiracy. Indeed, they have proffered no facts at all to show that the defendants acted in concert or reached a meeting of the minds to discriminate against Mr. Talley on the basis of his race. In their opposition, the plaintiffs simply restate the allegations made in their complaint and contend that they establish a conspiracy. (Pl.s' Opp'n at 13–15.) There is nothing sufficient in the complaint to support the plaintiffs' contention that these incidents are connected. Thus, the court cannot accept the plaintiffs' bald allegations that the incidents constitute a conspiracy. *See Simmons*, 47 F.3d at 1377 ("Indeed, we have specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts."). Accordingly the defendants' motion to dismiss will be granted as to Count IX.

A separate Order follows.