Etta NICOLE

v.

**GRAFTON SCHOOL, INC.**

**No. CIV.A. DKC 2000–324.**

United States District Court, D. Maryland.

Jan. 24, 2002.

John J. Condliffe, Shub–Condliffe & Condlffe, P.A., Towson, PA, Mark D. Stave, Law Office, Towson, PA, for Plaintiff.

John S. Vander Woude, Heather S. O'Connor, Eccleston and Wolf, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this case brought under 42 U.S.C. §§ 2000–3 *et seq.* ("Title VII") and 42 U.S.C. § 1981 is the motion of Defendant Grafton School, Inc. ("Grafton") to dismiss for failure to state a claim or, in the alternative, for summary judgment on Plain-

tiff's claim for hostile work environment discrimination [1]. The issues have been fully briefed and no hearing is deemed necessary. Local Rule 105.6. For reasons that follow, the court will grant Grafton's motion for summary judgment.

## I. Background

The following facts are uncontroverted or, unless otherwise noted, set forth in the light most favorable to Plaintiff. Grafton is a private, non-profit Virginia corporation which operates group homes, schools and other facilities for intellectually and physically handicapped children. Since May 18, 1997, Plaintiff Etta Nicole, a black Liberian resident of the United States, has been employed by Grafton, first as a part-time Academic Specialist and then as a full-time Residential Instructor as of early 1999. Paper no. 15, Ex. A, at 10–11.

On September 7, 1999, Plaintiff was evacuating students during a fire drill at Grafton. During the drill, one of Plaintiff's students began shaking his head and spitting. Sean Lore, one of Plaintiff's supervisors, assisted with the student. When the student drooled on Lore, he allegedly said to her, "Don't put your spit on me, put your spit on Etta, she's the kind of people you're supposed to put spit

on...." Paper no. 15, Ex. A, at 22. Plaintiff took Lore's comments to be racially motivated, indicating that black people or Africans are the kind of people who should be spit on. *Id.*, at 26–27.

Plaintiff immediately reported the incident to Keith King, Lore's supervisor, and related to him her belief that "kind of people" referred to people of her race. King verified the statement with Jason Smith, a former case manager who witnessed the incident, and then met with Lore. Lore admits that he made the statement, but insists that he intended the comment as a joke, that he meant that Plaintiff was used to dealing with this particular student, and that the statement had no racist meaning. Paper no. 15, Ex. B, at 49–51. King then met with Plaintiff and suggested to her that Lore had been kidding, that he meant no harm and that he was sorry. Paper no. 15, Ex. A, at 25.

At King's meeting with Plaintiff, he inquired as to whether Plaintiff would want to switch to the second shift, apparently so that she would not interact with Lore. Plaintiff found this offer to be insufficient in light of a long history of allegedly complaining to King about Lore's treatment of her. *Id.*, at 25. At that point, Plaintiff informed King that she would go to a

---

1. This is one of several related claims by employees against Grafton, all of whom are represented by the same attorney. Monita Short, DKC 2000–223, and Deborah Briscoe, DKC 2001–548, settled. Before the Short case settled, it was consolidated for discovery purposes with this case, Franklin Daso, DKC 2000–658, and Susie Sonpon, DKC 2000–1914. Discovery was begun in the consolidated cases pursuant to a January 3, 2001, scheduling order and was partially completed, including some depositions, before motions were filed by Grafton. There has been no formal discovery in the cases of Kenneth Onuoha, DKC 2001–339, Samson Eruanga, DKC 2001–549, and Carolyn Oladokun, DKC 2001–550. For reasons below, despite the fact that the motion was filed by Grafton

before the completion of discovery, summary judgment will be granted in Grafton's favor on Plaintiff's hostile work environment claim, as it will be with respect to all the pending hostile work environment claims against Grafton. Ruling on summary judgment before discovery is completed is appropriate for two reasons. First, in her response to Grafton's motion, Plaintiff proffers the fruits of discovery from all the consolidated cases. Second, because Plaintiff is called upon to provide evidence of her personal knowledge of incidents which affected her work environment at or around the time they occurred and such evidence could be provided by her own affidavit, she does not need further discovery in order to be able to forecast sufficient evidence to support her claim, if it exists.

"higher authority" and then filed her complaint with the EEOC. Id., at 25–26. On one other occasion, Plaintiff alleges that she heard Lore make a comment involving race, referring to the Grafton staff as "a bunch of African fools" when walking out of a Grafton "town meeting." Paper no. 15, Ex. A, at 61–62.

Plaintiff complains of several other discriminatory actions taken by Lore and Grafton which allegedly support her hostile work environment claim. The first of these incidents occurred on September 6, 1999, when Lore checked in on Plaintiff and found that she had been late to work. Plaintiff claims that, when Lore changed the arrival time for her shift from 3 pm to 2:30, she made a special arrangement with King to continue arriving at 3 so that she could take care of her young children. Paper no. 15, Ex A, at 40–41. King assured Plaintiff that he would deal with the problem. Although she has no knowledge of whether Lore knew of this special arrangement the day of the incident, she claims he was harassing her about getting to work late in order to retaliate for earlier problems between them. Id., at 43. Plaintiff alludes to earlier complaints made to King about Lore, but does not specify the nature of those complaints. Plaintiff also claims that Lore falsely accused her of not being present when she was and that another staff member, Nadia Komar, had heard Lore laughing about the situation. Paper no. 16, Ex. 22.

Plaintiff alleges that she was discriminated against in late 1999 or early 2000 when she was supposed to receive Grafton's annual "excellence award" as chosen by the staff, but the award was given to another worker who is also black. Id., at 46. This incentive award allegedly affects prospects for promotion. Paper no. 16, Ex. 22. Plaintiff claims that her colleagues on her shift told her that they would all pick her for the award, but that Lore picked someone from another shift instead and that this cost her the award. Paper no. 15, Ex. A, at 46. Plaintiff asserts that Lore was motivated to deny her the award because she had complained about him. Paper no. 16, Ex. 22.

Another claim of alleged discrimination arises from a May 9, 1999, incident in which one Grafton student had a behavior problem and injured other students on a Grafton bus. Plaintiff signed a memorandum given to her by Lore which detailed Grafton's policy for effective bus supervision and warned her that her supervision of the students had been inadequate. Paper no. 15, Ex. A–1. Two of Plaintiff's coworkers refused to sign identical memoranda. Plaintiff claims that she signed the memorandum under threats from Lore that if she did not sign, she could be fired for insubordination because, at the time, she was on probation as a new employee. Paper no. 15, Ex. A, at 33. According to Plaintiff, she was not on the bus at the time of the incident and she never received a promised copy of the signed memorandum even after complaining to King. Though Plaintiff has no knowledge of why the other coworkers refused to sign, she claims she was treated differently from them because of the threats. She was never subject to any discipline as a result of the incident. Paper no. 15, Ex. A, at 38–39.

Finally, Plaintiff alleges that Lore made two changes to her work environment that discriminated against her. First, she claims that Lore subjected her to embarrassment when he forced her unnecessarily to provide proof of insurance when driving a student to the psychiatrist even though she had done so many times before without the insurance. Her husband had to bring the proof of insurance out to her at Grafton before she was told by a nurse

that it was not needed. Paper no. 15, Ex. A, at 51. Second, Plaintiff claims that in February, 2000, Lore denied her overtime she had previously received. Paper no. 15, Ex. A, at 52. According to Plaintiff, Lore and King knew that she had family problems which necessitated the overtime hours and that they would typically provide overtime hours to staff who needed it. Paper no. 16, Ex. 22. Plaintiff admits that the staff member who received her overtime hours is black, but insinuates that she was denied the overtime as a result of her complaints about Lore. *Id.*

On or about August 31, 1999, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) against Grafton.[2] Complaint, at ¶ 7. On November 25, 1999, Plaintiff received a "right to sue" letter from the EEOC based on claims of employment discrimination under Title VII and deprivation of the right to make and enforce contracts under 42 U.S.C. § 1981. Complaint, at § 8; EEOC Complaint (attached). Plaintiff filed this suit promptly after receiving the "right to sue" letter.

In her complaint, Plaintiff claims that she was discriminated against "regarding the terms and conditions of her employment on the basis of race. . . ." Complaint, at § 10. Grafton responded with the pending motion to dismiss or, in the alternative, for summary judgment, challenging Plaintiff's claim as contradicted by her deposition testimony and lacking evidentiary support. Plaintiff opposes this motion by laying out the standard for hostile work environment discrimination and reciting a timeline of alleged incidents occurring at Grafton between September 1998 and April 2000. Paper no. 16, at 3–5.[3] While Plaintiff details the allegedly discriminatory incidents recounted above in her deposition testimony and affidavit, there is no evidence, or even allegation, that, aside from the spitting incident, Plaintiff had personal knowledge of these other incidents listed on the timeline.

## II. Standards of Review

■ Defendant has moved for dismissal, or, in the alternative, for summary judgment. Both parties have submitted material outside the pleadings so the appropriate standard for analyzing Plaintiff's claims is that for summary judgment. While Plaintiff requests in her response that a ruling on Grafton's motion be withheld until discovery is completed (Paper no. 11, at 5), she has not filed an affidavit under Fed.R.Civ.P. 56(f) opposing summary judgment on the grounds that information necessary for her opposition is un-

---

**2.** Many of the allegedly discriminatory incidents complained of by Plaintiff and described in her deposition testimony and affidavit occurred in September, 1999, after the date Plaintiff alleges that her EEOC Complaint was filed. It is unclear what, if any, events were the basis for Plaintiff's EEOC Complaint because she did not submit the Complaint as evidence and she claims that King's inadequate resolution of the spitting incident on September 7, 1999, prompted her to file the Complaint. However, Grafton does not make an argument for administrative exhaustion and so the court will treat the Title VII and § 1981 claims as properly brought.

**3.** While the Complaint alleges that Grafton retaliated against Plaintiff's complaints of harassment by denying her incentive awards, in her brief opposing Grafton's motion, Plaintiff only lays out the legal standard for hostile work environment. Even though she implies that several of the acts complained of were discriminatory because allegedly taken in retaliation for her complaints about Lore, she appears not to be bringing a separate charge of retaliation. Therefore, any evidence relating to the retaliation will be considered in the context of the hostile work environment analysis.

available or more discovery is necessary.[4] " '[A] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit.' " *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995), *quoting Hayes v. North State Law Enforcement Officers Ass'n*, 10 F.3d 207, 215 (4th Cir.1993) (internal quotations omitted). Thus, it is insufficient for Plaintiff merely to lament the lack of discovery where she "does not focus our attention on an affidavit presented to the district court that particularly specifies legitimate needs for further discovery." *Nguyen*, 44 F.3d at 242. Though the court proceeds with due caution when considering a motion for summary judgment before discovery is completed, here Plaintiff not only has access to the fruits of discovery in the related cases against Grafton, but the evidence needed to support her hostile work environment claim, if it exists, is within her personal knowledge. Given the lack of appropriate affidavits demonstrating specific need for discovery, the court will not delay consideration of the motion in order to await more discovery.

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir.1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. In *Celotex Corp.*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may proper-

---

4. Fed.R.Civ.P. 56(f) states: "Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

ly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.*, 736 F.2d 946, 958–59 (4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd*, 388 F.2d 987 (4th Cir.1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

### III. Analysis

Title VII of the Civil Rights Act of 1964 provides that an employer shall not "fail or refuse to hire or discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Section 1981(a) states in pertinent part that: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts... as is enjoyed by white citizens...." Because the "at-will employment relationship is contractual... such relationships may therefore serve as predi-cate contracts for § 1981 claims." *Spriggs v. Diamond Auto Glass II*, 242 F.3d 179, 183 (4th Cir.2001), *quoting Spriggs v. Diamond Auto Glass I*, 165 F.3d 1015, 1018–1019 (4th Cir.1999). In *Spriggs,* the plaintiff brought the same allegations under both Title VII and § 1981 and the court applied the same analysis to the claims under both statutes. The court will treat the hostile work environment claims as identical here as well.

Plaintiff alleges that she is the victim of a hostile work environment created by Grafton on the basis of her race and contends that Grafton has subjected Plaintiff to "a pattern and practice of humiliation and harassment" including, "allowing hostile racial slurs and comments." Complaint, at ¶ 10. Plaintiff is challenged to provide evidence to support the allegations in her complaint. While Plaintiff has brought forth some evidence relating to discriminatory incidents in her deposition and affidavit, the evidence is too little to support her allegations which are in some instances contradicted by her testimony.

The Fourth Circuit stated the test for a hostile work environment claim in *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir.1998), *citing Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 772 (4th Cir.1997):

> To state a claim for hostile work environment, [the plaintiff] must show that: (1) the harassment was unwelcome; (2) the harassment was based on his race or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer.

In that case, while the Fourth Circuit did not agree with all of the district court's conclusions, it upheld the grant of summary judgment for the defendant on the

plaintiff's hostile work environment claim because there were only conclusory and unspecific allegations that the incidents complained of by the plaintiff resulted from animosity based on the plaintiff's race or age. *Id.*, at 801–802.

In order to support a claim for hostile work environment, the alleged conduct must not only "create an objectively hostile or abusive work environment, [but the] victim must also perceive the environment to be abusive." *Spriggs*, 242 F.3d at 184 (internal citations omitted). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To determine whether the harassment was pervasive enough to render the work environment objectively abusive:

> ... the court looks to all the surrounding circumstances including "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating or a mere offensive utterance; and (4) whether it unreasonably interferes with [the] employee's work performance."

*Talley v. Farrell*, 156 F.Supp.2d 534, 541 (D.Md.2001), *quoting Smith v. First Union Nat. Bank*, 202 F.3d 234, 242 (4th Cir.2000) (internal citations omitted).

In trying to establish her claim, Plaintiff lists a timeline of events that occurred at the school which, she contends, support her claim of a hostile work environment. Paper no. 15, at 3–5. However, Grafton contends that the objective prong of the hostile work environment test cannot be met because only one of the incidents even involved Plaintiff. Paper no. 17, at 5. There is no evidence, or even allegation, that Plaintiff knew of the other incidents listed on the timeline at or around the time they occurred. Conduct targeted at persons other than Plaintiff may be considered in support of a hostile work environment claim because, "[w]e are, after all, concerned with the 'environment' of workplace hostility, and whatever the contours of one's environment, they surely may exceed the individual dynamic between the complainant and his supervisor." *Spriggs*, 242 F.3d at 184, *citing Walker*, 684 F.2d at 1359 n. 2. However, the subjective element of the test in *Spriggs* requires that the alleged victim perceive her environment to be hostile. Events which occurred without the knowledge of Plaintiff could not have contributed to her perception that the workplace was hostile. Therefore, timeline events not involving Plaintiff are not evidence which support her hostile work environment claim.

## A. Discriminatory incidents

Plaintiff alleges that Grafton discriminated against her in several incidents which, while not listed on the timeline or mentioned in her opposition brief, she details in her affidavit and deposition testimony. As related above, these alleged incidents are that: 1) Lore harassed her about being late to work after she made arrangements with King for a later start time, 2) Lore was responsible for denying her the "excellence" award she was set to receive, 3) she was made to sign a memorandum under duress, after her coworkers refused to sign, accepting responsibility for inadequate supervision of students on a bus when she was not present on the bus, 4) she was unnecessarily forced by Lore to provide proof of insurance when driving a student to the psychiatrist, and 5) she was denied overtime on the basis of race even though that overtime went to another black worker.

Plaintiff must demonstrate that the harassment she is complaining of was based on impermissible factors, in her case race. *See Causey*, 162 F.3d at 801. Fed. R.Civ.P. 56(e) requires that a party opposing a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." Therefore, in order for any of the above five incidents to support her claim, she must set forth specific evidence to show that the incident was not merely negative or motivated by dislike from a supervisor, but that it was motivated improperly by race. In the background of each of these incidents is Plaintiff's contention that Lore, while perhaps not motivated directly by race in taking the actions, was motivated to take them in response to her complaints about him to King, his supervisor. In order for such motivation to support the hostile work environment claim, she must be able to bring forth more than merely conclusory allegations that Lore was motivated to act because of Plaintiff's earlier complaints to King and that those earlier complaints involved actions impermissibly taken by Lore on the basis of race.

Plaintiff sets forth no evidence, apart from her own speculation, that Grafton or its employees were motivated to undertake any of the above five incidents as a result of racial animus or her complaints about Lore.

### 1. Memorandum Signing

Chronologically, the first incident to occur was the signing of the memorandum allegedly under duress. On its face, there is no evidence that Lore's request that she sign, even if unfair and under duress, was motivated by race. Additionally, Lore approached the other two workers allegedly involved in the bus incident and asked them to sign apparently identical memoranda. Plaintiff claims she was treated differently in that Lore threatened her to sign it, but she admits that she was not present when the other two workers were given the memorandum, so there is no evidence that Plaintiff was treated differently. In her affidavit, apparently in reference to the memorandum incident, Plaintiff infers that Lore requested that she sign the memorandum taking responsibility for the students' injuries because she had complained to King about the spitting incident and about the change in her hours. However, the May, 1999, memorandum incident occurred before these other incidents. Plaintiff does not set forth any evidence of the existence or nature of complaints about Lore or Grafton occurring before this incident.

### 2. Work Schedule

As with the memorandum incident, Plaintiff alleges that Lore harassed her about being late for work in response to earlier problems between them. Paper no. 15, Ex. A, at 43. There is nothing facially discriminatory about Lore's insistence that Plaintiff adhere to the work schedule. She presents no evidence that harassment about her hours continued once she brought the problem to King's attention (even if it took several tries) and she was never disciplined for her lateness. As with the memorandum incident, this alleged harassment occurred on September 6, 1999, one day before the spitting incident, and so could not be retaliatory for complaints about that incident. Plaintiff presents no evidence of earlier complaints about Lore regarding racially discriminatory treatment.

### 3. Excellence award/Denial of overtime/Insurance information

Even with regard to the incidents that occurred after Plaintiff's complaints about the spitting incident, Plaintiff does not set

forth any evidence relating to whether Lore improperly acted against her in response to her complaints. Plaintiff alleged in her deposition that she was denied the excellence award on the basis of race even though she admitted that the award was given to another black employee. In her affidavit, she claims that she was denied the award because she complained. Paper no. 16, Ex. 22. However, even if her deposition testimony that Lore was responsible for denying her the award is believed, though based on hearsay, Plaintiff sets forth no specific facts which place Lore's motivation for denying her the award into material dispute. Similarly, though Plaintiff alleges that she was denied overtime hours on the basis of race and because of her earlier complaints about Lore, she admits that the overtime hours went to another black employee. Paper no. 15, Ex. A, at 55. Furthermore, the only evidence that she presents linking the denial of overtime hours to her earlier complaints is that it occurred after Lore took over her shift in February, 2000. The same is true with regard to her allegation that she was unnecessarily made to get her insurance information by Lore. There is no evidence either of racial animus or of a relationship to her earlier complaints about him. She presents only conclusory and unspecific evidence that is not sufficient to place the question of Lore's motivation in dispute.

### B. Derogatory Remarks

The only two incidents, then, which can be considered when assessing whether Plaintiff's work environment was objectively hostile are the spitting incident and her allegation that Lore referred to the black Grafton staffers as "a bunch of African fools" while he was walking out of a meeting. Paper no. 16, Ex. A, at 61–62.

Initially, Grafton argues that Lore's comment to Plaintiff that she was the "kind of people you're supposed to put spit on" was not racially derogatory and so, while offensive, cannot be characterized by the court as causing a hostile work environment. *See generally Fisher v. Maryland Dep't of Housing and Comm. Dev.*, 32 F.Supp.2d 257, 262–63 (D.Md.1998) (finding that the plaintiff's claims of racially oriented criticism were "inherently ambiguous"); *see also Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (conduct that is merely offensive to employee does not implicate Title VII). However, Lore's self-serving explanation that the comment was meant as a joke do not render it racially ambiguous at the summary judgment stage where evidence must be viewed in the light most favorable to the non-moving party. A reasonable jury could infer that Lore's comment was directed at Plaintiff because of her race and so that comment can be considered when analyzing whether there was a hostile work environment.

While racial discrimination may be inferred from the spitting incident, Grafton is correct in its contention that use of this language alone is not "severe or pervasive enough to create an objectively hostile or abusive work environment." *Harris*, 510 U.S. at 21, 114 S.Ct. 367. The statement made by Lore must be considered in conjunction with his alleged reference to the Grafton staff as a "bunch of African fools." There is no doubt that this comment is offensive and suggestive of negative racial stereotypes. Courts have upheld hostile work environment claims based on the use of " . . . racially abusive language" where that use, "was repeated, continuous and prolonged despite [the plaintiff's] objections . . ." *Walker v. Ford Motor Co.*, 684 F.2d 1355, 1359 (11th Cir.1982). In *Spriggs*, "[The defendant's] frequent and highly repugnant insults were sufficiently severe or pervasive (or both) to cause a person of ordinary sensibilities to perceive

that the work atmosphere at the Forest-ville store was racially hostile." *Spriggs,* 242 F.3d at 185.

Assessed against the test from *Talley,* the circumstances surrounding these statements are insufficient to comprise a hostile work environment. While offensive, the comments do not rise above the level of a "mere offensive utterance." *Talley v. Farrell,* 156 F.Supp.2d at 541, *quoting Smith,* 202 F.3d at 242. Furthermore, as fleshed out in *Spriggs,* the comments are not sufficiently frequent for a reasonable jury to find that a hostile work environment existed. *Spriggs,* 242 F.3d at 185. Therefore, even taking both remarks together, Plaintiff's evidence does not meet the objective test for hostile work environment described in *Spriggs.*

Although the language allegedly used by Lore to and in reference to his subordinates, if true, is offensive, it is insufficient to establish a hostile work environment because it is not sufficiently pervasive. Therefore, Plaintiff's claim does not meet the objective test described in *Spriggs.* Accordingly, Grafton's motion for summary judgment will be granted as to Plaintiff's claim for hostile work environment discrimination.

## IV. Conclusion

Plaintiff fails to forecast sufficient evidence to meet the standard for hostile work environment discrimination. Accordingly, the court will grant Grafton's motion for summary judgment as to Plaintiff's hostile work environment claims under Title VII and § 1981.