**Susie M. SONPON**

v.

**GRAFTON SCHOOL, INC.**

**No. CIV.A. DKC 2000–1914.**

United States District Court,
D. Maryland.

Jan. 24, 2002.

John J. Condliffe, Shub–Condliffe & Condliffe, P.A., Mark D. Stave, Law Office, Towson, MD, for Plaintiff.

John S. Vander Woude, Heather S. O'Connor, Eccleston and Wolf, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this case brought under 42 U.S.C. §§ 2000–3 *et seq.* ("Title VII") and 42 U.S.C. § 1981 is the motion of Defendant Grafton School, Inc. ("Grafton") to dismiss for failure to state a claim or, in the alternative, for summary judgment on Plaintiff's claims for 1) discriminatory failure to promote and 2) hostile work environment discrimination [1]. The issues have been ful-

---

1. This is one of several related claims by employees against Grafton, all of whom are represented by the same attorney. Monita Short, DKC 2000–223, and Deborah Briscoe, DKC 2001–548, settled. Before the Short case settled, it was consolidated for discovery purposes with this case, Etta Nicole, DKC 2000–324, and Franklin Daso, DKC 2000–658. Discovery was begun in the consolidated cases pursuant to a January 3, 2001, scheduling order and was partially completed, including some depositions, before motions were filed by Grafton. There has been no formal discovery in the cases of Kenneth Onuoha, DKC 2001–339, Samson Eruanga, DKC 2001–549, and Carolyn Oladokun, DKC 2001–550. For reasons below, despite the fact that the motion was filed by Grafton before the completion of discovery, summary judgment will be granted in Grafton's favor on Plaintiff's hostile work environment claim, as it will with respect to all the pending hostile work environment claims against Grafton, and in Grafton's favor on Plaintiff's failure to promote claim. Ruling on summary judgment before discovery is completed is appropriate for two reasons. First, in her response to Grafton's motion, Plaintiff proffers the fruits of discovery from all the consolidated cases. Second, with regard to her hostile work environment claim, Plaintiff is called upon to provide evidence of her personal knowledge of incidents which affected her work environment at or around the time they occurred and such evidence could be provided by her own affidavit. She does not need further discovery in order to be able to

ly briefed and no hearing is deemed necessary. Local Rule 105.6. For reasons that follow, the court will grant Grafton's motion for summary judgment as to both claims.

## I. Background

The following facts are uncontroverted or, unless otherwise noted, set forth in the light most favorable to Plaintiff. Grafton is a private, non-profit Virginia corporation which operates group homes, schools and other facilities for intellectually and physically handicapped children. Since 1998, Plaintiff Susie Sonpon, a black African female resident of the United States, has been employed by Grafton as an Academic Specialist. Paper no. 10, at 2. Plaintiff's responsibilities as an Academic Specialist include assisting Grafton residents with various tasks such as making sure they ate breakfast, preparing them to be ready for class, taking them to school and teaching other basic tasks, Paper no. 10, at 2, Ex. A, at 17–18. *Id.*, at ¶ 7, Ex A–1.

In early September, 1999, Plaintiff applied for a promotion to the position of Residential Instructor at Grafton. She had an interview with Sean Lore, Grafton's Residential Supervisor, and Mamamadou Traore on October 14, 1999. On or about October 20, 1999, Plaintiff received a letter from Lore stating that Plaintiff was not selected for the position and that Grafton was still searching for "someone who meets the needs of the individual in the home and the needs of the home." Paper no. 11, Ex. 11.

A meeting was held between Plaintiff, Lore, John Straus, Plaintiff's immediate supervisor, and Keith King, Grafton's Residential Administrator, to discuss why Plaintiff did not receive the Residential Instructor position. At this meeting, Plaintiff was told, apparently by Lore, that her excessive tardiness and absenteeism cost her the promotion. Paper no. 10, Ex. A, at 51–52. Plaintiff questioned Straus at the meeting as to why he, her immediate supervisor, did not express complaints to her about excessive absences. Though Straus did not disagree with Lore's characterization, he admitted that he did not have the records in front of him. *Id.*, at 54. A subsequent search of the records by Lore showed absences and late days well in excess of the number set by Grafton policy as grounds for termination. Paper no. 11, Ex. 17.

Plaintiff alleges that, as she was walking away from this meeting, she heard Lore say, within earshot of Straus, "I don't want to give the job to her because she's a lazy African woman." Paper no. 11, Ex. 18, at 51.

On or about October 21, 1999, within 180 days of the occurrence of the acts about which she complains, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) against Grafton. Complaint, at ¶ 7. On June 2, 2000, Plaintiff received a "right to sue" letter from the EEOC based on claims of employment discrimination under Title VII. Complaint, at § 8; Paper no. 11, Ex. 19. Plaintiff filed this suit promptly after receiving the "right to sue" letter.

In her EEOC complaint, Plaintiff made reference not only to Grafton's failure to promote, but also to a separate incident occurring on September 17, 1999, in which she alleges that she was unfairly "written up" for a failure to take students on a scheduled August 16, 1999, outing to play miniature golf despite an acceptable explanation for her actions. Paper no. 11, Ex. 19. She alleges, in her deposition, that she was told to sign the Straus memorandum,

forecast sufficient evidence to support her       claim, if it exists.

which criticized her ability to communicate effectively as well as her failure to complete the outing, because of her race. Paper no. 10, Ex. A, at 63–68. Additionally, in her deposition, Plaintiff alleges that she was denied overtime hours on the basis of race. Paper no. 10, Ex. A, at 92.

In her complaint, Plaintiff claims that she was discriminated against "regarding the terms and conditions of her employment on the basis of race...." Complaint, at § 10. She claims that Grafton discriminated against her by a "engaging in a pattern and practice of humiliation and harassment" as well as by it "refusing to promote Plaintiff." *Id.* Grafton responded with the pending motion to dismiss or, in the alternative, for summary judgment, challenging Plaintiff's allegations as contradicted by her own deposition testimony and unsupported by sufficient evidence.

## II. Standards of Review

■■■ Defendant has moved for dismissal, or, in the alternative, for summary judgment. Both parties have submitted material outside the pleadings so the appropriate standard for analyzing Plaintiff's claims is that for summary judgment. While Plaintiff requests in his response that a ruling on Grafton's motion be withheld until discovery is completed (Paper no. 11, at 5), she has not filed an affidavit under Fed.R.Civ.P. 56(f) opposing summary judgment on the grounds that information necessary for her opposition is unavailable or more discovery is necessary.[2] " '[A] party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of

Rule 56(f) to set out reasons for the need for discovery in an affidavit.' " *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995), *quoting Hayes v. North State Law Enforcement Officers Ass'n*, 10 F.3d 207, 215 (4th Cir.1993) (internal quotations omitted). Thus, it is insufficient for Plaintiff merely to lament the lack of discovery where she "does not focus our attention on an affidavit presented to the district court that particularly specifies legitimate needs for further discovery." *Nguyen*, 44 F.3d at 242. Though the court proceeds with due caution when considering a motion for summary judgment before discovery is completed, here Plaintiff not only has access to the fruits of discovery in the related cases against Grafton, but the evidence needed to support her hostile work environment claim, if it exists, is within her personal knowledge. Given the lack of appropriate affidavits demonstrating specific need for discovery, the court will not delay consideration of the motion in order to await more discovery.

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Prop-*

---

**2.** Fed.R.Civ.P. 56(f) states: "Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

*erties,* 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.,* 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Pulliam Inv. Co.,* 810 F.2d at 1286 (citing *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v. Rollins Protective Servs. Co.,* 773 F.2d 592, 595 (4th Cir.1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. In *Celotex Corp.,* the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "spe-

cific facts showing that there is a genuine issue for trial."

*Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.,* 736 F.2d 946, 958–59 (4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd,* 388 F.2d 987 (4th Cir.1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

### III. Analysis

Title VII of the Civil Rights Act of 1964 provides that an employer shall not "fail or refuse to hire or discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Section 1981(a) states in pertinent part that: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts... as is enjoyed by white citizens...." Because the "at-will employment relationship is contractual... such relationships may therefore serve as predicate contracts for § 1981 claims." *Spriggs v. Diamond Auto Glass, II,* 242 F.3d 179, 183 (4th Cir.1999), *quoting Spriggs v. Diamond Auto Glass, I,* 165 F.3d 1015, 1018–1019 (4th Cir.1999). In *Spriggs,* the plaintiff brought the same allegations under both Title VII and § 1981 and the court applied the same analysis to the claims under both statutes. The court will treat the claims as identical here as well.

## A. *Failure to Promote*

■ Plaintiff can either satisfy her burden of proof for the failure to promote claim by direct proof of discriminatory intent, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), or through the indirect, burden-shifting method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Plaintiff puts forth only one piece of evidence supporting her claim that Grafton's failure to promote was discriminatory. In her deposition testimony, Plaintiff recounts a meeting she had with her immediate supervisor, John Straus, and two other Grafton supervisors, Keith King and Sean Lore, held to discuss why Plaintiff did not receive the Residential Instructor position for which she had applied. Plaintiff alleges that, after the meeting, Lore said, within earshot of Straus, "I don't want to give the job to her because she's a lazy African woman." Paper no. 11, Ex. 18, at 51.

While "[d]erogatory remarks may in some instances constitute direct evidence of discrimination," Plaintiff must demonstrate that "...remarks upon which [she] relies were related to the employment decision in question...." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 608 (4th Cir.1999) (internal citations omitted). In other words, there has to be a nexus between the offensive remark and Grafton's decision not to promote Plaintiff for that remark to comprise direct evidence of discriminatory discharge. Not only did the alleged "lazy African" statement occur after the promotion decision had been made, but, according to Plaintiff's own evidence, Lore was only one of several people involved in making the promotion decision. Paper no. 11, Ex. 17. Because this evidence is not sufficiently linked to the promotion decision, it is not direct evidence of discriminatory intent with respect to the failure to promote. Therefore, the court will analyze it as circumstantial evidence and apply the three-step burden shifting paradigm of *McDonnell Douglas*.

Under the *McDonnell Douglas* standard, the plaintiff first must establish a *prima facie* case of discrimination. In order to establish a prima facie case:

> She must show by a preponderance of the evidence that (1) she is a member of a protected class; (2) her employer had an open position for which she applied or sought to apply; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination.

*Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 959–60 (4th Cir. 1996), *citing (Burdine*, 450 U.S. at 253, 101 S.Ct. 1089; *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir.1994); *McNairn v. Sullivan*, 929 F.2d 974, 977 (4th Cir.1991)).

If the plaintiff produces sufficient evidence to support her *prima facie* case, the burden shifts to the employer to advance a legitimate, nondiscriminatory reason for the failure to promote. *See Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. If the employer successfully proffers such an explanation, the burden returns to the plaintiff to show that the proffered reason is a pretext for impermissible discrimination. *See St. Mary's Honor Center*, 509 U.S. at 507–08, 113 S.Ct. 2742. Once the plaintiff produces sufficient evidence to refute the defendant's proffered reason, "the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up discriminatory

purpose." *Reeves v. Sanderson Plumbing Products Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2108, 147 L.Ed.2d 105 (2000); *See also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. at 511, 113 S.Ct. 2742. ("[R]ejection of the defendant's proffered reasons will permit that trier of fact to infer the ultimate fact of intentional discrimination.").

■ Grafton alleges that Plaintiff has failed to establish all of the four elements of the *Evans* test necessary to make out a *prima facie* case of discriminatory failure to promote. The fourth element is that Plaintiff must show that, "[s]he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." *Evans*, 80 F.3d at 959–60, *citing Burdine*, 450 U.S. at 253, 101 S.Ct. 1089. Grafton contends that Plaintiff's rejection for the position of residential counselor does not give rise to any inference of unlawful discrimination by pointing to Plaintiff's and Lore's deposition testimony, both of which demonstrate that the position for which Plaintiff applied was filled by someone of the same race as Plaintiff. Paper no. 10, Ex. A, at 36–37; Ex. B, at 103. While the test does not explicitly state, as it does for discriminatory discharge, that the person hired must be outside of the protected class to satisfy the fourth element, courts have held that a plaintiff did not satisfy the fourth prong of the test for failure to promote where applicants of the same race and gender as the plaintiff filled the positions for which he had applied. *Nichols v. Comcast Cablevision of Maryland*, 84 F.Supp.2d 642, 650 (D.Md.2000), *citing Etefia v. East Baltimore Community Corp.*, 2 F.Supp.2d 751, 764 (D.Md.1998). "In cases where the position sought [by a plaintiff] was filled, the fourth prong is most easily satisfied by showing that someone outside of the plaintiff's protected group ultimately was selected for the position." *Langerman v.*

*Thompson*, 155 F.Supp.2d 490, 495 (D.Md. 2001), *citing Equal Employment Opportunity Commission v. Sears Roebuck and Co.*, 243 F.3d 846, 851 (4th Cir.2001) (fourth element satisfied in failure to hire case where the Hispanic plaintiff showed that defendant continued to seek applicants after the plaintiff was denied and then selected "less qualified" white applicant).

Though Plaintiff barely addresses her failure to promote claims in her opposition to Grafton's motion, she does attempt to counter Grafton's claim that the position was filled by a member of her protected class. In her deposition testimony, cited by Grafton for Plaintiff's admission that a black person was hired to fill the position for which she had applied, Plaintiff stated her belief that a white person was originally hired for that position and the job was only given to a black person after Plaintiff complained. Paper no. 10, Ex. A, at 37, 38. However, she provides no evidence of this series of events and her unsupported speculation is insufficient to carry her burden in opposing summary judgment.

Nevertheless, the "burden of establishing a *prima facie* case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089. Because the fourth prong of the test is not whether the job was given to someone outside of the protected class, but whether discrimination could be inferred from the circumstances, evidence of Lore's "lazy African" comment does satisfy, though barely, the relatively easy test for making out a *prima facie* case of disparate treatment.

■ Grafton contends that Plaintiff was not qualified for the promotion and not chosen due to her excessive tardiness and absences. Paper no. 10, at 5 n. 2, Ex. A, at 52–56; Depo Ex. 3. Even though Plaintiff makes out a *prima facie* case, she not only sets forth no evidence demonstrating that

Grafton's legitimate, non-discriminatory reason for failing to promote Plaintiff was merely pretextual, Plaintiff does not even address Grafton's reasons in her opposition brief. Fed.R.Civ.P. 56(e) requires that a party opposing a motion for summary judgement "must set forth specific facts showing that there is a genuine issue for trial." Far from demonstrating that there is a genuine dispute of material fact as to whether Grafton's stated legitimate reason for failure to promote was merely pretextual, Plaintiff's own evidence actually supports the reasons advanced by Grafton. In her deposition testimony, Plaintiff admits that her immediate supervisor, Straus, told her that the reason she did not get the promotion was her lateness and absence from work. Paper no. 11. Ex. 18, at 53. Furthermore, a memorandum from Sean Lore to Grafton's Human Resources manager, Patricia Hockman, submitted by Plaintiff as evidence, supports Grafton's contention that Plaintiff's excessive absenteeism cost her the promotion by detailing her late and absent days and recounting Grafton's policy that excessive absenteeism can be grounds for termination. Paper no. 11, Ex. 17. Given the lack of any evidence calling into doubt Grafton's stated reasons for failing to promote Plaintiff, and in light of the fact that another member of Plaintiff's protected class was hired for the position, the court will grant Grafton's motion for summary judgment as to Plaintiff's failure to promote claim.

### B. Hostile Work Environment

■ Plaintiff alleges that she is the victim of a hostile work environment created by Grafton on the basis of her race and contends that Grafton has subjected Plaintiff to "a pattern and practice of humiliation and harassment" including, "allowing hostile racial slurs and comments." Complaint, at ¶ 10. Plaintiff is challenged to provide evidence to support the allegations in her complaint. While Plaintiff has brought forth some evidence to support her allegations in the form of her EEOC complaint, the evidence is too little.

The Fourth Circuit stated the test for a hostile work environment claim in *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir.1998), *citing Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 772 (4th Cir.1997):

> To state a claim for hostile work environment, [the plaintiff] must show that: (1) the harassment was unwelcome; (2) the harassment was based on his race or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer.

In that case, while the Fourth Circuit did not agree with all of the district court's conclusions, it upheld the grant of summary judgment for the defendant on the plaintiff's hostile work environment claim because there were only conclusory and unspecific allegations that the incidents complained of by the plaintiff resulted from animosity based on the plaintiff's race or age. *Id.*, at 801–802.

In order to support a claim for hostile work environment, the alleged conduct must not only "create an objectively hostile or abusive work environment, [but the] victim must also perceive the environment to be abusive." *Spriggs*, 242 F.3d at 184 (internal citations omitted). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To determine whether the harassment was

pervasive enough to render the work environment objectively abusive:

> ... the court looks to all the surrounding circumstances including "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating or a mere offensive utterance; and (4) whether it unreasonably interferes with [the] employee's work performance."

*Talley v. Farrell*, 156 F.Supp.2d 534, 541 (D.Md.2001), *quoting Smith v. First Union Nat. Bank*, 202 F.3d 234, 242 (4th Cir.2000) (internal citations omitted).

In trying to establish her claim, Plaintiff lists a timeline of events that occurred at the school which, she contends, support her claim of a hostile work environment. Paper no. 11, at 3–5. However, Grafton contends that the objective prong of the hostile work environment test cannot be met because, aside from the denial of her application for promotion, only one of the other incidents even involved Plaintiff. Paper no. 13, at 5. There is no evidence, or even allegation, that Plaintiff knew of the other incidents listed on the timeline at or around the time they occurred. Conduct targeted at persons other than Plaintiff may be considered in support of a hostile work environment claim because, "[w]e are, after all, concerned with the 'environment' of workplace hostility, and whatever the contours of one's environment, they surely may exceed the individual dynamic between the complainant and his supervisor." *Spriggs*, 242 F.3d at 184, *citing Walker*, 684 F.2d at 1359 n. 2. However, the subjective element of the test in *Spriggs* requires that the alleged victim perceived her environment to be hostile. Events which occurred without the knowledge of Plaintiff could not have contributed to her perception that the workplace was hostile. Therefore, timeline events not involving Plaintiff are not evidence which support her hostile work environment claim.

Although Plaintiff did not raise it in her opposition brief, the court must deal with an additional allegation made by Plaintiff at her deposition which could support a claim of hostile work environment. In her deposition testimony, Plaintiff raised the possibility that she had been denied requested overtime because of her race. However, she admitted in that deposition testimony that she did not know why her overtime request had been denied and that other black employees had received overtime. Paper no. 10, Ex. A, at 92. There is simply no evidence that the denial of overtime was related to race, so the denial of overtime cannot be used by Plaintiff to support a *prima facie* case of hostile work environment discrimination.

Therefore, in assessing whether there is evidence which could support Plaintiff's hostile work environment claim, the court can only consider the two incidents from the timeline directly involving Plaintiff. The first of these is Lore's alleged reference to Plaintiff as a "lazy African woman" after his meeting with Plaintiff, Straus and King. The second is an incident in which Plaintiff was reprimanded for aborting a student trip to play miniature golf that she was supervising and taking the students to Dairy Queen instead. In her EEOC complaint, Plaintiff alleges that she was unfairly "written up" for this failure, despite an acceptable explanation for her actions. Paper no. 11, Ex. 19. In a grievance letter detailing the incident to Patricia Hockman, Grafton's Human Resources Administrator, Plaintiff claimed that the original plan of taking the students to play miniature golf was rendered impossible when one of the student's medications could not be found and Straus, Plaintiff's supervisor, could not be located. Paper no. 11, Ex. 14. In this letter, Plaintiff alleges that Graf-

ton's policy is to give a verbal warning rather than the written memorandum she received from Straus to sign. *Id.* In addition, in both her EEOC complaint and in the Hockman grievance memorandum, Plaintiff took exception to the fact that the memorandum from Straus criticized the speed and manner of her speech as contributing to her alleged failure adequately to communicate during the mini golf incident. Paper no. 11, Ex. 14, Ex. 19. Finally, in her deposition, Plaintiff alleged that she was told to sign the Straus memorandum because of her race. Paper no. 10, Ex. A, at 63–68.

This incident is insufficient to support a claim for hostile work environment. There is no evidence that the reprimand was tied in any way to Plaintiff's race. Plaintiff admitted in her deposition that other black Grafton employees involved in the mini golf incident were not given memoranda to sign and that she was given the memorandum because she was in charge and changed the activity without authorization. Paper no. 10, Ex. A, at 63–66. Plaintiff's mere speculation that Straus was motivated by racial animus in giving her a written rather than verbal reprimand is not evidence. The inference that Straus' criticism of her speech might be tied to race is simply too attenuated. Therefore, this incident is not one from which discrimination could possibly be inferred.

Moreover, even were the court to view this incident, at best, as giving rise to a weak inference of discrimination, there is only one other incident which could be the basis for a hostile work environment claim. Plaintiff alleged in her deposition that Lore referred to her as a "lazy African woman." Paper no. 11, Ex. 18, at 51. If true, there is no doubt that this comment is offensive and suggestive of negative racial stereotypes. However, assessed against the test from *Talley*, the circumstances surrounding this statement are insufficient to comprise a hostile work environment. Plaintiff admits that, apart from that incident, she had not heard Lore make racial remarks to anyone. *Id.*, at 50. Also, while offensive, this comment does not rise above the level of a "mere offensive utterance." *Talley v. Farrell*, 156 F.Supp.2d at 541, *quoting Smith*, 202 F.3d at 242. Furthermore, in *Spriggs*, not only the highly repugnant nature of the comments made by the supervisor, but their frequency, led the court to conclude that a reasonable jury could find that a hostile work environment existed. *Spriggs*, 242 F.3d at 185. Therefore, even if this remark is combined with the weak inference of discrimination from the mini golf incident, Plaintiff's evidence does not meet the objective test for hostile work environment described in *Spriggs*. Accordingly, Grafton's motion for summary judgment will be granted as to Plaintiff's claim for hostile work environment discrimination.

## IV. Conclusion

While Plaintiff makes out a weak *prima facie* case of discriminatory failure to promote, she does not provide evidence challenging Grafton's alleged legitimate nondiscriminatory reason for making that decision. Additionally, Plaintiff fails to satisfy the standard for hostile work environment discrimination. Accordingly, the court will grant Grafton's motion for summary judgment as to all claims. A separate order will be entered.

## ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this _____ day of January, 2002, by the United States District Court for the District of Maryland, ORDERED that:

1. Defendant's motion for summary judgment under Fed.R.Civ.P. 56 BE, and the same hereby IS, GRANTED on all claims;

2. JUDGMENT BE, and the same hereby IS, ENTERED in favor of Grafton School, Inc., and against Susie M. Sonpon on all claims; and

3. The Clerk will transmit copies of the Memorandum Opinion and this Order to counsel for the parties and CLOSE this case.