**Denise ORENGE**

v.

**Anne VENEMAN, Secretary, United States Dept. of Agriculture.**

**No. Civ.A. DKC 99–544.**

United States District Court, D. Maryland.

Sept. 10, 2002.

Gary T. Brown, Gary T. Brown and Associates, Camilla Carolyn McKinney, Law Offices of Camilla C. McKinney, Washington, DC, for Plaintiff.

Gary T. Brown, Gary T. Brown and Associates, Washington, DC, Roann Nichols, Office of the United States Attorney, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Presently pending and ready for resolution in this employment discrimination case is the motion for summary judgment, pursuant to Fed.R.Civ.P. 56, of Defendant Ann Veneman, Secretary of the United States Department of Agriculture ("USDA"). The issues have been fully briefed and no hearing is deemed necessary. Local Rule 105.6. For the reasons that follow, the court shall grant Defendant's motion for summary judgment.

## I. Background

The following facts are uncontroverted or set forth in the light most favorable to

Plaintiff. Plaintiff is a black female who holds a position as a GS–12 Special Agent in the Office of Inspector General (OIG) at the USDA. Plaintiff began her career with the OIG in February, 1988 in the Riverdale, Maryland office and was transferred to the Pittsburgh, Pennsylvania office in 1989. In 1990, USDA accused Plaintiff of falsifying automobile reports and suspended her for two weeks. Plaintiff filed a race discrimination claim regarding the matter and lost before an administrative law judge and later on appeal before the Equal Employment Opportunity Commission ("EEOC").

In 1996, Edwin Forteza became Plaintiff's supervisor. He informed her in April 1997 that she had made mistakes on her mileage reports. Forteza referred the matter to investigation, during which Plaintiff admitted that the report was sloppy but explained that it was because she had been working so hard. Plaintiff contacted an EEO counselor on April 29, 1997 in response to the initiation of the investigation into her mileage reports. On July 1, 1997, Forteza allegedly told Plaintiff that she would be required to keep track of her mileage on a daily basis. Plaintiff alleges that it is unusual for the Agency to launch an investigation regarding mileage charges, and that white agents provide faulty mileage reports but are not investigated.[1]

On May 13, 1997, Plaintiff wrote to Assistant Inspector General of Investigations Craig Beauchamp, requesting a promotion to a GS–13 position because of her increased responsibilities. Plaintiff alleges that federal employees are often awarded promotions based on increased responsibilities. Special Agent Brian Haaser re-

---

1. On July 15, Forteza sent Plaintiff a memo regarding the inaccuracies in her mileage reports. Orenge responded with a memo stating that she thought the investigation was reprisal.

sponded to her letter, denying her request for a promotion.[2] Plaintiff alleges that on August 1, 1997, Haaser chastised her about shortcomings in her job performance and told her that although she wanted a promotion, "because of what he represented were her performance deficiencies, she would not get a promotion." Paper no. 45, ¶ 21.

On September 8, 1997, Plaintiff alleges that Forteza told her to report to the Assistant United States Attorney prosecuting one of her cases that she had been suspended from duty for two weeks in 1990. She admits that agents commonly reveal impeachable information about themselves to prosecutors, but claims that this usually is done at trial, not, as in her case, before indictment.

Plaintiff alleges that Forteza repeatedly told her that her indictment statistics were low, but when she requested to open new cases, Forteza denied her requests or delayed responding for up to a year. Plaintiff also alleges that Forteza would threaten that the office in which she worked might close because of the low statistics, and that she could be transferred anywhere in the country.

Plaintiff further alleges that Forteza made several derogatory comments about women and blacks, such as Plaintiff's position not being one for women with children, and, during a discussion about the O.J. Simpson trial, that most white people will never trust black people again. She alleges that Forteza told another black agent, Walter Cohen, that blacks are trying to get a free ride and that eventually the Agency was going to get rid of "you guys" because "you" (blacks) don't "hold your weight." He also allegedly once told Cohen that he did not like standing beside women at firing practice because they were incompetent. Further, Forteza allegedly told Cohen that if anyone filed an EEO complaint against him, it would fail because he also was considered a minority.[3]

In 1999, Plaintiff applied for a promotion to a GS–13 position for which there was a vacancy. The position was filled by a white male, Philip Rothenheber. At the time of the 1999 non-selection, there were no black female GS–13 Special Agents in the OIG.

On or about February 25, 1999, Plaintiff filed a complaint in this court alleging race and gender discrimination and retaliation for EEO activity. On or about March 20, 2000, Plaintiff moved to amend her complaint to allege adverse employment action, an essential element absent from the original complaint. In the first amended complaint, Plaintiff claimed that she had been denied promotions in 1997 and 1999 in retaliation for engaging in protected EEO activity and because of discrimination based on race and gender.[4] In June, 2000, Defendant filed a motion to dismiss Plaintiff's amended complaint. The court granted Defendant's motion to dismiss Plaintiff's claims of retaliatory hostile work environment and retaliatory denial of promotion in 1997 (Count III) without prejudice, requiring Plaintiff to file any proposed amendment within 10 days.[5] The

---

2. Haaser informed her that non-competitive promotions were not permitted after the GS–12 level, and that if Plaintiff wanted a promotion, she would have to wait for a vacancy and apply.

3. Cohen's employment with the OIG terminated in August, 1993, thus all events Cohen recited in his Declaration presumably occurred prior to August, 1993.

4. On or about August 22, 2000, Plaintiff filed a separate complaint, DKC–00–2537, containing essentially identical allegations, which was consolidated with the present action.

5. In granting the motion to dismiss on these claims, the court stated that Plaintiff would be allowed to amend her complaint to "allege sufficient facts to support a causal connection

court denied the motion with respect to Plaintiff's claims of failure to promote and hostile work environment based on race (Count I) and sex (Count II) and retaliatory failure to promote in 1999 (Count III). On or about March 19, 2001, Plaintiff filed a second amended complaint, adding a reference to Plaintiff's April 29, 1997 contact with an EEO counselor. Defendant now moves for summary judgment on all remaining claims.

## II. Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R.CIV.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. FED.R.CIV.P. 56(c); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655,

82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir.1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505.

In *Celotex Corp.*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.*, 736 F.2d 946, 958–59 (4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd*, 388 F.2d 987 (4th Cir.1967)). There must be "sufficient evidence favoring the nonmov-

between any alleged protected activity in which she participated and any alleged adverse action Defendant may have taken as a result."

ing party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

## III. Analysis

### A. 1999 Non-promotion (retaliation, race, sex)

Title VII of the Civil Rights Act of 1964 "prohibits an employer from discriminating against an employee in retaliation for that employee's opposition to, or complaint about, an unlawful employment practice." 42 U.S.C. § 2000e–3(a) (2000). Where, as here, Plaintiff sets forth no direct evidence of retaliation, Plaintiff may satisfy the burden of proof through the indirect, burden-shifting method of proof set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *see also Fitch v. Solipsys Corp.,* 94 F.Supp.2d 670 (D.Md.2000) ("The *McDonnell Douglas* burden-shifting scheme applies in analyzing retaliation claims under Title VII") (*citing Smith v. First Union Nat'l Bank,* 202 F.3d 234, 248 (4th Cir.2000)).

In order establish a prima facie case of retaliation, a plaintiff must show (1) that the employee engaged in protected activity; (2) that the employer took an adverse employment action against the employee; and (3) that a causal connection existed between the protected activity and the ad-

verse action. *See Munday v. Waste Management of North Am., Inc.,* 126 F.3d 239, 242 (4th Cir.1997). In the case at bar, Plaintiff alleges that Defendant retaliated against her for prior EEO activity by not selecting her for the vacant GS–13 position, for which she applied, in 1999. Plaintiff's prior EEO activity is presumably a reference to the complaints she filed arising out of investigations of her mileage reports in 1990 and 1997. Defendant concedes that the appropriate officials were aware of these complaints at the time of the promotion decision in May, 1999.

■ Although Plaintiff has shown that she engaged in protected EEO activity and suffered an adverse employment action, she is unable to prove the causal nexus between the two required for a *prima facie* case of retaliation. A lengthy time lapse between the employer becoming aware of protected EEO activity and the alleged adverse employment action negates the inference that a causal connection exists between them. *See Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 657 (4th Cir.1998); *see also Causey v. Balog,* 162 F.3d 795, 803 (4th Cir.1998) (thirteen month interval between plaintiff's initial charge and termination is too long to establish causation absent other evidence of retaliation).

Plaintiff argues that the amount of time between the employer's awareness of the protected EEO activity and the adverse employment action is not the sole factor to be considered in determining whether a causal connection exists.[6] Plaintiff cites to *Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.1989) for the proposition

---

**6.** Plaintiff cites to *Carter v. Ball,* 33 F.3d 450 (4th Cir.1994), arguing that the court there found a sufficient causal nexus despite the fact that the plaintiff filed one of his EEO complaints on September 25, 1988, and the adverse action did not occur until July 29,

1990. However, Plaintiff fails to inform the court that the plaintiff in *Carter* filed another EEO complaint on February 9, 1990, less than six months before the adverse employment action occurred.

that a plaintiff's assertion that she was fired after her employer became aware of her EEO activity satisfies the "less onerous burden of making a *prima facie* case of causality." The lapse between the EEO activity and the termination in *Williams,* however, was only three and a half months and, therefore, does nothing to overcome the holdings in *Dowe* and *Causey* regarding the effect of a lengthy time lapse on the causal connection. Moreover, Plaintiff has introduced no evidence other than the sequence of events to support a finding of a causal connection between her 1990 and 1997 EEO complaints and her 1999 non-promotion.

■ Aside from retaliation, it appears that Plaintiff also alleges that her non-selection for promotion in 1999 was based on her race and sex. In non-promotion cases, a plaintiff must establish a *prima facie* case of illegal motivation by establishing that: (1) he or she is a member of a protected group; (2) there was an open position for which he or she applied or sought to apply; (3) he or she was qualified for the position; and (4) he or she was rejected under circumstances giving rise to an inference of unlawful discrimination. *See Evans v. Technologies Applications and Serv., Co.,* 80 F.3d 954, 959–60 (4th Cir.1996). Plaintiff can clearly satisfy the first two elements of the *prima facie* case. Plaintiff can also satisfy the third element because she, undisputedly, made the "best qualified list" for consideration for promotion. While Defendant argues that placement on the best qualified list merely means that Plaintiff was minimally qualified for the position, that is all that is required to satisfy the third element.

■ The fourth element of the *prima facie* case requires Plaintiff to show that she was rejected under circumstances giving rise to an inference of unlawful discrimination. Plaintiff attempts to do so by noting that since 1992, black females who have applied for promotions in the OIG have not been selected. Paper no. 45, ¶ 39. Construing these alleged facts in the light most favorable to Plaintiff, Plaintiff has shown that the circumstances surrounding her non-selection give rise to an inference of discrimination. Thus, although Plaintiff has not established a *prima facie* case of retaliation, she has established a *prima facie* case of discrimination based on race and gender.

■ Once a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to present a legitimate, non-discriminatory reason for the adverse employment action alleged. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089). Defendant here has articulated a legitimate, non-discriminatory reason for selecting Rothenheber for the GS–13 position instead of Plaintiff. Specifically, Defendant has stated that the selectee was more qualified for the vacant position than Plaintiff.[7] Relative employee qualifications "are widely recognized as valid, non-discriminatory bases for any adverse employment decision." *Evans,* 80 F.3d at 960. Defendant bases the argument regarding Plaintiff and Rothenheber's relative qualifications on their educational and employment backgrounds, performance appraisals, and productivity reports.

■ Because Defendant articulated a legitimate, non-discriminatory reason for the agency's conduct, the burden shifts back to

---

7. In the Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Defendant withdraws the incorrect assertion made in the Motion for Summary Judgment that Plaintiff must prove that she was better qualified than the selectee as an element of her *prima facie* case.

Plaintiff "to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves*, 530 U.S. at 146–147, 120 S.Ct. 2097. In a failure to promote case, "the plaintiff must establish that she was the better qualified candidate for the position sought." *Evans*, 80 F.3d at 960 (*citing Gairola v. Virginia Dep't of Gen. Servs.*, 753 F.2d 1281, 1287 (4th Cir.1985)). Plaintiff's evidence falls short of that needed to overcome a summary judgment motion. She criticizes Defendant for looking favorably at Rothenheber's college degree when that was not a requirement for the position and argues that her lower performance appraisals and indictment statistics were the result of discrimination. However, Plaintiff offers little if any proof that her performance appraisals and productivity reports were tainted by discrimination.[8] "[A] plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." *Williams*, 871 F.2d at 456 (*citing Gairola*, 753 F.2d at 1288). Because Plaintiff never ultimately demonstrates that she was more qualified for the promotion than Rothenheber, she fails to establish pretext. Therefore, Plaintiff's claim of failure to promote based on race and gender must fail.

B. 1997 Non-promotion (retaliation)

█ In a Memorandum Opinion and Order dated March 7, 2001, this court dismissed Plaintiff's 1997 claim for retaliatory non-promotion for failure to allege which protected activity gave rise to the alleged 1997 non-promotion. The court stated that Plaintiff would be allowed to amend her complaint to allege sufficient facts to support a causal connection between any alleged protected activity in which she participated and any alleged adverse action Defendant may have taken as a result. In her opposition motion, Plaintiff notes that the amended complaint, timely filed on March 19, 2001, added a reference to Plaintiff's April 29, 1997 contact with an EEO counselor, which preceded Plaintiff's May 16, 1997 non-promotion by Haaser.[9] See Paper no. 45, ¶ 40. Defendant argues that the second amended complaint merely recites the same facts as the two previous complaints and fails to allege any causal connection between protected EEO activity and an adverse employment action.

Even if Plaintiff's second amended complaint sufficiently alleges a protected EEO activity (the April 29, 1997 contact with an EEO counselor) and an alleged adverse action (the May, 1997 non-promotion), Plaintiff has failed to allege sufficient facts to support a causal connection between the two. The EEO Complaint Summary from Plaintiff's April 29, 1997 contact with an EEO counselor indicates that Forteza was the management official contacted regarding Plaintiff's EEO activity. Paper no. 58, Ex. 1. However, it is undisputed that Haaser is the official who wrote the May 16, 1997 memo denying Plaintiff's request to be promoted from GS–12 to GS–13. Plaintiff has not put forth any evidence that Haaser was aware of Plaintiff's April 29 EEO activity when he denied her request for a non-competitive promotion. Defendant's "knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish" the causation element. *Dowe*, 145 F.3d at 657. Because

---

8. In fact, as Defendant notes, Haaser's summary chart of applicants' productivity ranked a black male, Shane Gilmore, second and a white female, Maria Crann, third for the GS–13 position.

9. Although Plaintiff failed to designate it as such when filing it with the court, the "amended complaint" is actually Plaintiff's second amended complaint.

Plaintiff has failed to show that Haaser had knowledge of Plaintiff's protected EEO activity of April 29, 1997 when he denied her promotion request, she fails to establish a causal connection. Therefore, Plaintiff has not established a *prima facie* case of retaliation and has not successfully revived this claim from the March 7, 2001 order dismissing it.

Even if Plaintiff's second amended complaint succeeded in making out a *prima facie* case of retaliation, Defendant has articulated a legitimate, non-discriminatory reason for the agency's conduct. Haaser purportedly based his denial of Plaintiff's request for a non-competitive promotion to GS–13 on his understanding that promotion from GS–12 to GS–13 was only available through a competitive process for a vacant GS–13 position, and he stated so in his May 16, 1997 memorandum to Plaintiff. Paper no. 31, Ex. M. Plaintiff argues that this reason is a pretext for discrimination, citing to Haaser's deposition testimony that he was aware of the process of non-competitive "promotions" through accretion of duties and had once promoted a GS–4 or 5 using that method. Haaser depo., 131–32. However, Haaser's full testimony was that he was aware of promotion through accretion of duties, but believed that all promotions beyond GS–12 are subject to a competitive process. *Id.* at 138. He further stated that he did not "promote" Plaintiff through an accretion of duties because it simply did not cross his mind. *Id.*

Plaintiff bears the burden of proving that Haaser's stated reason for not granting Plaintiff the non-competitive promotion is pretextual, and she has failed in this regard. Plaintiff has failed to offer any evidence that a non-competitive promotion from GS–12 or GS–13 is appropriate, or that she was even qualified for such a promotion if it existed. Plaintiff also tries to contrast the denial of Plaintiff's non-competitive promotion request with Haaser's hiring of a white Hispanic male, Raymond Quijas, to fill a vacant GS–13 slot. This comparison is irrelevant, however, because Quijas was allegedly hired to fill a vacant position and was not promoted through accretion of duties.

Because Plaintiff has failed to demonstrate that Defendant's denial of the non-competitive promotion was based on anything other than the stated reasons, Plaintiff has failed to meet her burden of proving pretext. Accordingly, whether or not Plaintiff made out a *prima facie* case of retaliation, the court will grant Defendant's motion for summary judgment on this claim.

C. Hostile Work Environment (race, sex, retaliation)

To state a hostile work environment claim based on race or sex, a plaintiff must show that: (1) the harassment was unwelcome; (2) the harassment was based on her race and/or sex; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *See Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 183–83 (4th Cir.2001) (race) (citing *Causey,* 162 F.3d at 801); *Hartsell v. Duplex Products, Inc.,* 123 F.3d 766, 772 (4th Cir.1997) (sex) (citation omitted). In addition, Plaintiff must not only show she subjectively felt the environment to be hostile, but also that it would have been objectively hostile to a reasonable person. *See Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

Plaintiff alleges that based on race and sex, Forteza and others harassed her by, among other things, (1) launching an investigation regarding mileage reports she had submitted with errors, while

whites made such errors without an investigation; (2) constantly complaining about her low indictment statistics, while refusing to grant her request to take on new cases; (3) constantly threatening to transfer her because of the office's low productivity, and (4) ordering her to report to an Assistant United States Attorney prosecuting one of her cases that she had been suspended for two weeks in 1990, before it was common practice to do so.

Plaintiff attributes these actions to race and sex because of several derogatory remarks Forteza allegedly made to her and to Cohen. In a conversation regarding the O.J. Simpson trial, Forteza allegedly told her that whites will never trust blacks again. He also allegedly told her that her position was not for women with children. He allegedly told Cohen that he could fire him at any time and that blacks are trying to get a free ride. He also allegedly told Cohen that the Agency was going to get rid of all "you guys," and when Cohen asked him whether his reference to "you guys," meant blacks, Cohen responded, "what do you think, I'm talking about, you guys don't pull your weight." Moreover, Plaintiff alleges that during that conversation with Cohen, Forteza referred to the black agent in "Pittsburgh," which indicated that he was talking about Plaintiff. He also allegedly stated that he did not like standing next to women during firearms training because they were incompetent and that if anyone filed an EEO complaint against him, "things would go in his favor" because he too is a minority.

Defendant argues that Plaintiff's evidence fails to establish that Defendant's purported conduct was sufficiently severe or pervasive to create a hostile work environment. A court must look at the totality of the circumstances in order to determine whether a work environment is hostile or abusive. *See Harris*, 510 U.S. at 23, 114 S.Ct. 367. These circumstances include:

(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating; and (4) whether it unreasonably interferes with an employee's work performance. *See id.; Smith*, 202 F.3d at 241. In the case at bar, the totality of circumstances analysis requires consideration of the alleged derogatory remarks, as well as other allegedly discriminatory conduct.

*1. Alleged racist and sexist remarks*

Plaintiff alleges that Forteza made only two comments to Walter Cohen regarding black employees, as well as the one to her after the O.J. Simpson trial that "most white people will never trust Black people again because of that decision. . . ." Defendant denies that Forteza ever made these remarks and notes that the alleged comment to Plaintiff, if actually said, was merely a neutral observation about race relations in general. Plaintiff also alleges that Forteza made it clear to Cohen that he did not want to stand near women during firearms training because they were incompetent. Forteza also allegedly commented to Plaintiff that women in her job position hardly ever have children. Defendant denies that Forteza made this remark and again asserts that if he did, it was a neutral observation and not evidence of gender animus.

In their totality, then, Forteza only made five allegedly racist or sexist remarks over a period of at least seven years. Although three of the remarks were made to Cohen rather than Plaintiff, they may be considered in support of a hostile work environment claim because " '[w]e are, after all, concerned with the 'environment' of workplace hostility, and whatever the contours of one's environment, they surely may exceed the individual dynamic between the complainant and his supervisor.' " *Nicole v. Grafton School,*

181 F.Supp.2d 475, 482 (D.Md.2002) (*quoting Spriggs*, 242 F.3d at 184). Still, however, these five remarks over a seven year period do not appear to the court to rise to the level of a hostile or abusive environment, nor would they cause a reasonable person to believe that Forteza's actions were motivated by gender and/or racial animus.

### 2. Other alleged conduct

Plaintiff alleges that the investigation into errors on her mileage reports was part of the harassment to which Defendant has subjected her. Yet, Plaintiff readily admitted that she may have committed errors on her mileage reports. After the investigation concluded that Plaintiff had failed to comply with OIG policies and procedures in completing mileage records, Plaintiff was simply directed to comply with such policies. This does not appear to the court to be severe conduct, but rather a logical response to Plaintiff's record keeping errors. Plaintiff tries to imply that the investigation into her mileage reports and the subsequent follow-up were based on racial animus by alleging that white agents also make mistakes in their reports but are not reprimanded. Plaintiff, however, offers no evidence to support this allegation.

Plaintiff further alleges that she suffered a hostile work environment when Forteza refused to allow her to open new cases, while criticizing her low indictment statistics. Defendant argues that new investigations were merely deferred until Plaintiff completed pending investigations. Plaintiff offers no evidence, other than her own belief, that Defendant did anything other than make non-discriminatory decisions regarding investigative priorities and resources.

Plaintiff alleges that she was constantly threatened with transfer from the Pittsburgh office. Yet, her own testimony indicates that the "constant threats" were merely a few discussions regarding management concerns. For example, Forteza's alleged assertion that USDA wanted to close smaller offices which had low indictment statistics is merely a neutral observation about one of the decisions facing the agency. Further, Plaintiff only recalls discussing the possible closing of the Pittsburgh office with Forteza on two occasions. No reasonable person could construe these alleged exchanges as hostile.

Finally, Plaintiff alleges that she was subjected to a hostile work environment when she was asked to report to an Assistant U.S. Attorney prosecuting one of her cases that she had been suspended from duty for two weeks in 1990. Plaintiff concedes that it is common practice for agents to reveal to prosecutors any information in their personnel records which would tend to impeach them at trial, but asserts that Plaintiff was required to do so at a much earlier stage than normal. Plaintiff's argument is apparently that by requiring Plaintiff to disclose her suspension, Defendant intended to cast an unfavorable light upon Plaintiff so prosecutors would not want to work with her.

Defendant argues that in March, 1997, OIG/USDA for the first time issued a policy on disclosure of impeachable material concerning an agent to the prosecutor involved in a case. When Haaser learned that Plaintiff had potential impeachable material in her personnel file, he instructed Forteza to tell her to refrain from testifying in court or informing the AUSA until OIG legal counsel researched the issue. Paper no. 58, ex. 36. Plaintiff allegedly disregarded Forteza's instruction and made the decision herself to disclose the suspension to the AUSA. Plaintiff offers no evidence to rebut Defendant's account of what occurred.

Viewing the circumstances described above in their totality, the court does not agree with Plaintiff that they are "sufficiently severe or pervasive to alter conditions of employment and create an abusive atmosphere." Rather, the circumstances alleged appear to be reasonable management decisions taken by Defendant, which no reasonable person could perceive as hostile. Further, Plaintiff fails to demonstrate that any of the "harassing" conduct to which she was subjected was based on impermissible factors, in her case race and/or sex. The allegedly discriminatory remarks were neither offensive nor frequent enough to lead a reasonable person to believe that Forteza's actions were motivated by gender and/or racial animus.

Because Defendant's conduct was not sufficiently severe or pervasive to constitute hostile work environment harassment based on race or sex, it cannot constitute retaliatory harassment either. Even if Plaintiff had proven that Defendant's conduct constituted harassment, Plaintiff has failed to establish the causal connection required in a retaliation claim between protected EEO activity and adverse employment action. *See Munday*, 126 F.3d at 242; *Carter*, 33 F.3d at 460. Nearly all of the alleged remarks and conduct of which Plaintiff complains occurred *before* she filed her first complaint in 1997, and even before she initiated contact with an EEO counselor on April 29, 1997.

For example, Forteza's alleged remarks to Cohen occurred before Cohen left the OIG in 1993. The investigation into Plaintiff's mileage reports occurred prior to April 29, 1997, as did the alleged transfer threats and the alleged refusal to allow Plaintiff to open new cases. In fact the only alleged "harassment" that occurred after Plaintiff alleges she engaged in protected EEO activity is the discussion regarding informing the AUSA about her 1990 suspension. Because all but one of the alleged harassing acts occurred *prior* to Plaintiff's protected EEO activity, Plaintiff's involvement in the EEO activity cannot possibly have caused the allegedly harassing behavior.

## IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is granted. A separate Order will be entered.

### ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this ----- day of September, 2002, by the United States District Court for the District of Maryland, ORDERED that:

1. Defendant's motion for summary judgment under Fed.R.Civ.P. 56 BE, and the same hereby IS, GRANTED;

2. JUDGMENT BE, and the same hereby IS, ENTERED in favor of Defendant Ann Veneman, Secretary, U.S. Department of Agriculture, and against Plaintiff Denise Orenge;

3. The Clerk will transmit copies of the Memorandum Opinion and this Order to counsel for the parties and CLOSE this case.